

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

APR 2 5 2019

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| In the Matter of the Search of | ) | |
| INFORMATION ASSOCIATED WITH still2theleft@gmail.com, ognunes100@gmail.com, and jwrentals415@gmail.com THAT IS STORED AT PREMISES CONTROLLED BY Google LLC | ) ) ) ) ) ) | Case No. 2: 1 9 - SW - 3 5 3    CKD |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____ Eastern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
| 18 USC Section 1344 | [Bank Fraud] |
| 18 USC Section 1028A | [Aggravated Identity Theft] |
| 18 USC Section 1956 | [Money Laundering] |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

☒ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Laura E. Giouzelis
Federal Bureau of Investigations
*Printed name and title*

Sworn to before me and signed in my presence.
Date: 4/25/2019

*Judge's signature*

City and state: Sacramento, California

~~Kendall J. Newman~~, U.S. Magistrate Judge
*Printed name and title*

**Carolyn K. Delaney**
**U.S. Magistrate Judge**

1 | McGREGOR W. SCOTT
United States Attorney
2 | ROBERT J. ARTUZ
Special Assistant U.S. Attorney
3 | 501 I Street, Suite 10-100
Sacramento, CA 95814
4 | Telephone: (916) 554-2700
Facsimile: (916) 554-2900
5 |

6 | Attorneys for Plaintiff
United States of America
7 |

8 |                    IN THE UNITED STATES DISTRICT COURT

9 |                      EASTERN DISTRICT OF CALIFORNIA

10 |

11 | In the Matter of the Search of:          CASE NO.

12 | INFORMATION ASSOCIATED WITH         AFFIDAVIT IN SUPPORT OF AN APPLICATION
still2theleft@gmail.com,             FOR A SEARCH WARRANT
13 | ognunes100@gmail.com, and
jwrentals415@gmail.com THAT IS STORED
14 | AT PREMISES CONTROLLED BY Google
LLC
15 |

16 |

17 | I, Laura E. Giouzelis, being first duly sworn, herby depose and state as follows:

18 |                 **I.      INTRODUCTION AND AGENT BACKGROUND**

19 |        1.       I make this affidavit in support of an application for a search warrant for information that

20 | is stored at premises controlled by Google LLC, an electronic communication service provider

21 | headquartered at 1600 Amphitheatre Parkway, Mountain View, California.  The information to be

22 | searched is described in the following paragraphs and in Attachment A, hereby incorporated by

23 | reference.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§

24 | 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google LLC to disclose to the government copies

25 | of the information further described in Attachment B.

26 |        2.       I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so

27 | employed for eight years.  I am currently assigned to the Sacramento Field Office where I investigate

28 | fraud and organized crime.  My training and experience includes a seventeen-week basic training course

AFFIDAVIT                                           1

1  at the FBI Academy and supplemental training in terrorism, fraud, and the development and operation of

2  confidential sources.  I have participated in the several investigations involving bank fraud, wire fraud,

3  aggravated identity theft, and money laundering.

4       3.    The facts in this affidavit are based on my personal observations, my training and

5  experience, and information obtained from other agents and witnesses.  This affidavit is intended to

6  show merely that there is sufficient probable cause for the requested warrant and does not set forth all of

7  my knowledge about this matter.

8       4.    FBI and the California Regional Enforcement Allied Computer Team (REACT) Task

9  Force conducted much of the investigation described below.  REACT is a partnership of California

10  local, state, and federal agencies formed in cooperation with private industry to investigate technological

11  crime.  REACT conducts multi-jurisdictional investigations including stolen high technology, identity

12  theft, and other computer related crimes.

13       5.    Based on the facts set forth in this affidavit, there is probable cause to believe that

14  Jonathon WARD (aka Johnathon WARD) and Monica NUNES committed acts in violation of 18 U.S.C.

15  §§ 1344 (bank fraud), 1028A (aggravated identity theft), and 1956 (money laundering) in the Eastern

16  District of California and elsewhere.  There is also probable cause to search the information described in

17  Attachment A for evidence of these crimes and further described in Attachment B.

18               **II.**    **JURISDICTION**

19       6.    This Court has jurisdiction to issue the requested warrant because it is "a court of

20  competent jurisdiction" as defined by 18 U.S.C. § 2711.  Specifically, the Court is "a district court of the

21  United States … that-has jurisdiction over the offense being investigated."  18 U.S.C. § 2711(3)(A)(i).

22               **III.**    **PROBABLE CAUSE**

23               **The Criminal Acts**

24       7.    This investigation has shown that WARD, NUNES, and others yet to be named, acquired

25  "Point of Sale" (POS) terminals by either purchase or theft and manipulated them to make fraudulent

26  merchant refunds starting at least as early as June 1, 2018, and continuing until on or about February 1,

27  2019.  This investigated bank fraud scheme is referred to as "Forced Post Refund Fraud" or "Refund

28  Fraud".  The scheme exploits the refund process of the merchant accounts of various banks and payment

1   processors.  A merchant account is a type of bank account that allows businesses to accept payments via
2   multiple electronic methods, typically using debit and credit cards ("access cards").  Such an account is
3   established under an agreement between a merchant (e.g., a retail establishment) and a merchant
4   acquiring bank for the settlement of access card transactions.  The acquiring bank processes credit or
5   debit card payments on behalf of the merchant.

6       8.      When a legitimate business wants to accept access cards as payment for merchandise or
7   services, they open a merchant account with an acquiring bank to manage funds and process credit and
8   debit transactions.  For example, when a merchant makes a sale and accepts payment via an access card,
9   they enter the amount of the sale and then "swipe" the access card on a POS terminal.  The terminal
10  reads the magnetic stripe on the rear of the access card and processes the purchase by electronically
11  transmitting a request to initiate a transfer of funds from the access card holder's account to the
12  merchant's account.  This transaction is completed by a bank directly or via a payment processor over
13  phone lines or the internet.

14      9.      Although some acquiring banks act as their own processor to process payment and refund
15  transactions involving access cards, others employ a specific payment processing company ("payment
16  processor") to process the payments and refunds for them.  A payment processor can be appointed by a
17  merchant to handle transactions from various channels such as credit and debit cards for the merchant
18  acquiring banks.

19      10.     In general, when a payment processor is used to process card transactions, the merchant's
20  POS terminal transmits a merchant ID number and other information to the payment processor
21  indicating that the transaction is legitimate.  In an operation that will usually take a few seconds, the
22  payment processor will check the transmission data by forwarding it to the respective access card's
23  issuing bank or card association (e.g., Visa) for verification.  Once the payment processor has received
24  confirmation that the credit card details are verified, the information will be relayed back via a payment
25  gateway to the merchant, who will then complete the payment transaction.  The funds are then
26  transferred from the purchaser's/access card user's account and deposited into the merchant's account.

27      11.     Similarly, when a merchant requests a refund of a purchase they again swipe the
28  purchaser's access card at the POS terminal and enter the refund amount.  The POS terminal reads the

1   magnetic strip on the rear of the access card and processes the refund. The refund amount is then

2   deducted from the merchant's account and credited to the access card's account.

3       12.   Using one or more POS terminals that were reprogrammed with new merchant account

4   information, WARD and NUNES executed fraudulent refunds, even though no purchases were ever

5   made. During this fraudulent refund process, the payment processor or bank, believing that the

6   transmitted request for refunds came from the true merchant(s), transmitted false refund money to the

7   access card account. WARD and NUNES then depleted the access card by using it to make purchases,

8   ATM cash withdrawals, and money order purchases. These fraudulent refunds resulted in losses to the

9   banks holding the merchant accounts. The victim merchants likely did not realize the funds were

10  withdrawn until they checked their bank statements, which may have taken days or even weeks. By that

11  time, the money had been transferred from the merchant bank account to the access card accounts and

12  often removed from the card accounts via subsequent purchase or transfer.

13      13.   Matsuda's Nursery is a business located at 10600 Florin Road, Sacramento, California, in

14  the Eastern District of California whose merchant payment processor is also Worldpay/Vantiv. WARD

15  and NUNES were never employed by that business. Additionally, the hours of operation for Matsuda's

16  are Monday through Friday, 7:00 am through 4:30 pm. Matsuda's was identified as a victim of this

17  fraud. Matsuda's merchant account is with Wells Fargo, a bank that is FDIC insured.

18      14.   Instant Storage is a business located at 301 State Road, Bakersfield, California, in the

19  Eastern District of California whose merchant payment processor is also Worldpay/Vantiv. WARD and

20  NUNES were never employed by Instant Storage. Additionally, the hours of operation for Instant

21  Storage are Monday through Friday, 8:00 am through 5:00 pm. Instant Storage was identified as a

22  victim of this fraud. Instant Storage's merchant account is with Bank of America, a bank that is FDIC

23  insured.

24      15.   In July 2018, REACT investigators were investigating WARD and NUNES after

25  identifying them as participants in this bank fraud scheme against at least Instant Storage as discussed

26  herein. REACT investigators knew that the suspects often conducted refund fraud from various hotels.

27  Based on my experience and discussions with other law enforcement personnel, criminals often conduct

28  fraud schemes from hotels to hide their true identities and the location of incriminating evidence. On

1  September 21, 2018, REACT investigators obtained a federal search warrant to track a mobile device

2  having phone number 415-516-7613, which was a phone number associated with WARD.  On October

3  12, 2018, REACT investigators tracked WARD and NUNES to a Pleasanton Marriot, located at 11950

4  Dublin Canyon Road, Pleasanton, California.  At that time, the REACT investigators knew that both

5  WARD and NUNES were on searchable probation, and they suspected that WARD and NUNES were

6  involved in Refund Fraud.  REACT officers then contacted WARD and NUNES in and around

7  WARD's vehicle, a Black Cadillac Escalade, in the parking lot of the Pleasanton Marriot, and conducted

8  a search of the Cadillac.

9      16.    During the Cadillac search, officers found a loaded handgun and a personal use amount

10  of methamphetamine.  Both WARD and NUNES were convicted felons, and officers arrested them that

11  day on gun and drug charges.  REACT officers also located and seized multiple access cards and

12  WARD's and NUNES' cellular phones from the Cadillac.  Additionally, WARD had the following

13  items in his wallet at the time of his arrest (the list is not exhaustive):

14      a)    A Key Bank debit card ending x2088 and having the name "Jonathon Ward"; and

15      b)    A PayPal card ending x8910 and embossed with the name "Jonathon Ward".

16      17.    NUNES had the following item (among other items of evidentiary value) in her purse at

17  the time of her arrest: a receipt dated October 12, 2018 showing the purchase of $50.00 worth of credits

18  from a Recharge Kiosk at Boomers (miniature golf/go karts) in Livermore purchased with PayPal card

19  ending x8910.

20      18.    An analysis of historic location information for this WARD's phone also showed that he

21  was located in Rancho Cordova, California, on October 1 through October 3, 2018.  WorldPay/Vantiv

22  records show that, during that same timeframe, WARD and NUNES were executing fraudulent refunds

23  that targeted Matsuda's Wells Fargo merchant account.

24      19.    REACT investigators learned that WARD and NUNES had directed the relocation of

25  specific items of evidence and contraband to 3150 Mills Drive, Brentwood, California, to avoid law

26  enforcement detection and seizure, which was the residence of WARD's sister.  Investigators then

27  obtained a state search warrant to search that residence and executed the search on October 17, 2018.

28  Among the items seized at the residence were:

a)     Nine POS terminals;

b)     A Wells Fargo debit card ending x7922 and having the name Monica Nunes;

c)     A handwritten note detailing a script for a conversation to Mercury Payments regarding a JW Rentals account at Paypal;

d)     Nine Blank access cards, one of which had the name of "Johnathon Ward" on the magstripe;[1] and

e)     A handwritten note on mail addressed to WARD's sister stating, "$1,000 Shut off card have card mailed – PayPal – JW rentals Gmail.com".

20.     Agents analyzed records from PayPal for an account with business name JW Rentals (hereafter, the "JW Rentals PayPal Account") created on July 15, 2018. The JW Rentals account was registered with user name "JOHNATHON WARD", WARD's date of birth, WARD's social security number, and physical addresses associated with WARD. The JW Rentals PayPal account listed e-mail addresses still2theleft@gmail.com and jwrentals415@gmail.com as associated e-mail addresses. The JW Rentals PayPal account showed the account received money from a known coconspirator or co-schemer on September 7, 2018. Additionally, the JW Rentals PayPal Account contained records of items purchased and delivered to Jonathon Ward at 3150 Mills Drive, Brentwood, California including a World Payment Terminals VeriFone VX520, purchased on July 15, 2018. Based on my experience, to conduct this type of fraud, credit card terminals are needed. E-mails sent from PayPal to the e-mails listed on the PayPal account would list further detail regarding the transactions listed in the PayPal records. Based on my experience and discussion with other law enforcement officers, PayPal will send information about customer's accounts to the customer's e-mail on file. Criminals involved in fraudulent activity will use an e-mail they control to register PayPal accounts and other financial institutions so they can monitor the fraudulent activities. There exists probable cause to believe there will be evidence of fraud including communication from PayPal financial institutions in the e-mail accounts jwretnals415@gmail.com and still2theleft@gmail.com.

---

[1] This card was a blank, i.e., it had no markings on it and only a magstripe affixed to it. The card number and the name information were gleaned from the encoded magstripe and subsequently verified by Metropolitan Commercial Bank. Based on my training and experience, criminals use blank access cards to encode credit/debit account information for facilitating fraud schemes.

21.     On July 9, 2018, WARD opened Key Bank account x6537 associated with debit card x2088 in a Key Bank in Salt Lake City, Utah.  On July 15, 2018, multiple fraudulent refunds were loaded onto Key Bank debit card x2088 (found in WARD's wallet at the time of his October 12, 2018, arrest) from the Instant Storage account.  Worldpay records show that this access to Instant Storage's account occurred through their system via the Internet between July 15, 2018 and July 16, 2018, using IP address 40.129.186.144.  According to open source records, IP address 40.129.186.144 is leased to The Residence Inn located at 1000 Airway Boulevard, Livermore, California.  The Assistant Manager for The Residence Inn provided REACT agents with a copy of the registry for the dates of July 15–16, 2018.  The registry listed WARD as having checked into the Residence Inn between July 14 and July 16, 2018.  The Assistant Manager also provided REACT Agents with security surveillance video showing WARD in the hotel on July 16, 2018.  The Assistant Manager told REACT agents that the emails still2theleft@gmail.com and ognunes100@gmail.com were provided to the Residence Inn at the time of check-in.

22.     Fairfield Police Department reported Fairfield resident, Victim 1, had property stolen from his vehicle on or about August 1, 2018.  Victim 1 told REACT Investigators his wallet and social security card were stolen from a vehicle.  A review of information obtained from WARD's smartphone, shows that he used Victim 1's name while communicating with Heartland Payment Systems on August 27, 2018, through the email address of jwrentals415@gmail.com.  Heartland Payment Systems is owned by Global Payments merchant processing services.  Records show Heartland Payment is a victim in fraud scheme executed by WARD and NUNES.

23.     According to records received from PayPal, on December 13, 2018, a PayPal account was opened in the name of Victim 1 using his/her true date of birth and social security number, credit card statement name JWRENTAL41, and e-mail jwrentals415@gmail.com.  Based on further information obtained from PayPal, identity information is confirmed by PayPal, so a true identity must have been be used to open this PayPal account.  Based on my training, experience, and discussions with other law enforcement officers, criminals involved with online fraud and money transfers will open accounts in stolen and others identities to evade law enforcement detection of the criminal's identity.  Accordingly, based on my training and experience, there is probable cause to believe that WARD and

1  NUNES are involved in using stolen identities to facilitate their Refund Fraud scheme.

2       24.    Based on my training experience and discussions with other law enforcement officers,

3  criminals involved in fraud may create fake businesses to transfer funds into and through the fake

4  business account to conceal the true nature of the funds from law enforcement.  According to PayPal

5  Records, an account with business name JW Rentals was created on July 15, 2018, with user name

6  JOHNATHON WARD and the following associated e-mail addresses: still2theleft@gmail.com and

7  jwrentals415@gmail.com.  Based a review of information obtained from PayPal, emails containing fake

8  invoices were sent from the JW Rentals PayPal Account to co-conspirators/schemers.  A further review

9  of these records shows that the co-conspirators/schemers paid the invoices with the money obtained

10  through the Refund Fraud.  The purpose of this PayPal Account is to disguise the true nature of the

11  fraudulently obtained money.  Based on my training and experience, there is probable cause to believe

12  that WARD and NUNES were coordinating these PayPal transactions in an effort to launder the

13  proceeds of their fraud scheme.

14          **Probable Cause the Accounts to be Searched Contain Evidence of a Crime**

15       25.    During the execution of the Instant Storage refund fraud associated with card x2088,

16  WARD associated himself with the e-mail addresses ognunes100@gmail.com and

17  still2theleft@gmail.com.  WARD used the e-mail address still2theleft@gmail.com with his JW Rentals

18  PayPal account.  Based on my experience and discussion with other law enforcement officers, criminals

19  involved with online fraud will use e-mail addresses to receive information from real businesses,

20  including banks, about their fraud.  They will also use e-mail to send messages between co-conspirators

21  including sharing the messages from the real businesses as evidence of the fraud.

22       26.    After WARD's arrest on October 12, 2018, REACT investigators obtained a search

23  warrant for the contents of WARD's and NUNES' cellular phones.  The forensic exam of NUNES'

24  phone showed the e-mail account "ognunes100@gmail.com" was captured as the e-mail account used

25  on the phone.  The forensic exam of WARD's cell phone showed the email JWRentals415@gmail.com

26  and ognunes100@gmail.com communicated with each other.  The contents of the email show an

27  unknown image was sent between the two emails.  The subject matter was "DMV".  Based on my

28  experience and discussion with other law enforcement officers, criminals use e-mail to send messages

1  between co-conspirators including sharing the messages from the real businesses as evidence of the

2  fraud.

3       27.     According to records received from Metropolitan Bank, on 8/27/2018, a Visa card ending

4  x1302 was registered in WARD's name with WARD's date of birth, WARD's social security number,

5  and physical addresses associated with WARD, 3150 Mills Drive, Brentwood, California. Card x1302

6  was associated with e-mail address jwrentals415@gmail.com. This card was listed as an "Avid GO!"

7  card. An Avid Go! card allows a card holder to have a reloadable debit card in the user's name. The

8  application requires true identifiers including name, phone number, and address. Account updates

9  would be e-mailed to the user on the e-mail provided during registration. Once the information is

10 verified, Visa will mail an embossed card to the user's address for use. Card x1302 was used to make

11 multiple fraudulent refunds including a $9000.00 fraudulent refund from Matsuda's on October 4, 2018

12 at approximately 6:36 am PDT. According to both card x1302 and JW Rentals PayPal records, on

13 October 2, 2018, there was an attempted transfer of $555.80 from the card x1302 to the JW Rentals

14 PayPal. Based on my experience and discussion with other law enforcement officers, banks will send

15 information about a customer's bank accounts to the customer's e-mail on file. Criminals involved in

16 fraudulent activity will use an e-mail they control to register bank accounts and other financial

17 institutions so they can monitor the fraudulent activities. There exists probable cause to believe there

18 will be evidence of fraud including communication from banks and other financial institutions in the e-

19 mail account: jwrentals415@gmail.com.

20      28.     Shortly after their arrests in October 2018, WARD and NUNES were released on bond

21 on or about the same month. WARD was arrested again on February 1, 2019, on new state charges, and

22 NUNES was arrested again on or about the same date on an outstanding warrant. WARD was

23 subsequently released again and arrested again in Salt Lake City on or about February 15, 2019.

24      29.     Based on my training and experience and the facts set forth in this affidavit, there is

25 probable cause to believe WARD, NUNES, and others engaged in, and continue to engage in, a bank

26 fraud scheme, identity theft, and money laundering. Particularly, as described above, there is probable

27 cause to believe that these subjects engaged in a Refund Fraud scheme and used the following email

28 addresses to execute and facilitate these crimes: still2theleft@gmail.com, ognunes100@gmail.com, and

1 | jwrentals415@gmail.com (collectively, the "target accounts"). There is also probable cause to believe
2 | that the target accounts not only still contain the communications described in this affidavit, but other
3 | similar emails exchanged in furtherance of the scheme.

4 | 30. Furthermore, there is probable cause to believe that the target accounts contain evidence
5 | that extends beyond simply email. Based on my training and experience, Gmail and its corresponding
6 | Android app may use Google Drive (Google's cloud storage service) to view certain attachments and, in
7 | general, Gmail is streamlined to save email attachments directly to the user's Google Drive. Therefore,
8 | there is probable cause to believe that the Google Drive data for the target accounts contains email
9 | attachments originating from the user's Gmail account. Even if the user deleted the original email in
10 | Gmail, the attachment may still be present in Google Drive.

11 | 31. Based on my training and experience, I believe the conspirators in this scheme must
12 | exchange and manage voluminous amounts of specific information such as victims' and co-schemers'
13 | personally identifiable information and bank account information—e.g., routing numbers, account
14 | numbers, POS terminal data, online usernames and passwords, and bankcard PINs. A cloud storage
15 | service such as Google Drive would allow the aforementioned information to be stored in an electronic
16 | file, such as a document or spreadsheet, easily accessed by multiple conspirators using multiple
17 | electronic devices in multiple locations. Therefore, there is probable cause to believe that the Google
18 | Drive data for the target accounts contains evidence of the scheme described in this affidavit.

19 | 32. Smartphones commonly synchronize data via the internet to cloud storage services and to
20 | the provider's servers in general. This data includes but is not limited to, photos, contacts, phone
21 | settings, internet browsing history, and bookmarked webpages. Samsung smartphones use Google's
22 | mobile operating system, Android. Given that Android is a Google product, Android phones are
23 | generally predisposed to synchronize data to the user's Google account. For example, an Android phone
24 | may automatically upload pictures to Google's cloud photo storage service, Google Photos, and/or
25 | Google Drive in order to back up the photos in case the phone is lost or damaged, and to free up local
26 | storage space on the phone. Furthermore, internet browsing-related data synchronized to the target
27 | accounts may evidence access of the websites of the financial institutions, payment processors, and
28 | merchants that were targeted in the above-described scheme. Therefore, there is probable cause to

1  believe the target accounts contain photos, internet browsing-related data, and other data that evidence
2  the scheme described in this affidavit.

3      33.    Login session information may identify devices and IP addresses used to access the target
4  accounts and may in turn correspond to devices and IP addresses associated with WARD, NUNES, and
5  other co-schemers. For Google accounts, Google can use a process known as cookie analysis to identify
6  other Google accounts that were accessed using the same computer that accessed a given Google
7  account. This information may then in turn identify the individual or individuals controlling the target
8  accounts.

9      34.    Google collects and retains data from Android enabled mobile devices. The company
10  uses this information for location-based advertising and location based search results. Per Google, this
11  information is derived from Global Position System (GPS) data, cell site/cell tower information, and Wi-
12  Fi access points. While the specific parameters of when this data is collected are not entirely clear, it
13  appears that Google collects this data whenever one of their services is activated and/or whenever there
14  is an event on the mobile device such as a phone call text, messages, internet access, or email access.
15  The e-mail addresses associated with the fraud are the target accounts. Surveillance video and still
16  images show that WARD and NUNES had at least one mobile device in their possession at ATMs and
17  banks while making fraudulent transactions. It is likely that WARD or NUNES accessed the target
18  accounts with a mobile device such as a smartphone; any many such devices are Wi-Fi enabled. If they
19  accessed one of the target accounts with such a device, Google may have be tracked and recorded the
20  GPS information associated with the device. I believe this data will show the movements of the subjects
21  involve in the refund fraud conspiracy, and constitute further evidence relevant to the ongoing criminal
22  investigation.

23      35.    Lastly, there is probable cause to believe WARD, NUNES, and other co-schemers
24  communicated about, and took steps in furtherance of, the Refund Fraud scheme discussed in this
25  affidavit prior to the first mentioned fraudulent transaction in July 2018. Based on my training and
26  experience, I believe their fraud scheme required at least a month of preparation before they started
27  conducing fraudulent refund transactions. For example, WARD, NUNES, and other co-
28  conspirators/schemers, needed this time to formulate the plan/scheme, agree on the plan/scheme, and

11

1  then carry out steps of the plan/scheme, which preceded the first known fraudulent refunds.  Such
2  preceding steps included, for example, identifying potential victim merchants/processors, retrieving and
3  programming POS terminals, and setting up bank accounts through which to receive the fraudulent
4  refunds.

5  **Additional Background Concerning Email and Location Data**

6  36.     In my training and experience, I have learned that Google provides a variety of on-line
7  services, including electronic mail ("email") access, to the public.  Google allows subscribers to obtain
8  email accounts at the domain name gmail.com, like the email account listed in Attachment A.
9  Subscribers obtain an account by registering with Google.  During the registration process, Google asks
10  subscribers to provide basic personal information.  Therefore, the computers of Google are likely to
11  contain stored electronic communications (including retrieved and unretrieved email for Google
12  subscribers) and information concerning subscribers and their use of Google services, such as account
13  access information, email transaction information, and account application information.  In my training
14  and experience, such information may constitute evidence of the crimes under investigation because the
15  information can be used to identify the account's user or users.

16  37.     In my training and experience, email providers generally ask their subscribers to provide
17  certain personal identifying information when registering for an email account.  Such information can
18  include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative
19  email addresses, and, for paying subscribers, means and source of payment (including any credit or bank
20  account number).  In my training and experience, such information may constitute evidence of the
21  crimes under investigation because the information can be used to identify the account's user or users.
22  Based on my training and my experience, I know that even if subscribers insert false information to
23  conceal their identity, I know that this information often provide clues to their identity, location or illicit
24  activities.

25  38.     In my training and experience, email providers typically retain certain transactional
26  information about the creation and use of each account on their systems.  This information can include
27  the date on which the account was created, the length of service, records of log-in (i.e., session) times
28  and durations, the types of service utilized, the status of the account (including whether the account is

inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

39.    In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

40.    In my training and experience, I know that Google uses cookies and similar technologies to track users visiting Google's webpages and using its products and services. Basically, a "cookie" is a small file containing a string of characters that a website attempts to place onto a user's computer. When that computer visits again, the website will recognize the cookie and thereby identify the same user who visited before. This sort of technology can be used to track users across multiple websites and online services belonging to Google. More sophisticated cookie technology can be used to identify users across devices and web browsers. From training and experience, I know that Google's cookies and similar technology may constitute evidence of the criminal activity under investigation. By linking various accounts, devices, and online activity to the same user or users, cookies and linked information can help identify who was using a Google account and determine the scope of criminal activity.

41.    As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account. This "user

1  attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search

2  warrant at a residence.  For example, email communications, lists of contacts, and images sent (and the

3  data associated with the foregoing, such as date and time) may indicate who used or controlled the

4  account at a relevant time.  Further, information maintained by the email provider can show how and

5  when the account was accessed or used.  For example, as described below, email providers typically log

6  the Internet Protocol (IP) addresses from which users access the email account along with the time and

7  date.  By determining the physical location associated with the logged IP addresses, investigators can

8  understand the chronological and geographic context of the email account access and use relating to the

9  crime under investigation.  This geographic and timeline information may tend to either inculpate or

10  exculpate the account owner.  Additionally, information stored at the user's account may further indicate

11  the geographic location of the account user at a particular time (e.g., location information integrated into

12  an image or video sent via email).  Last, stored electronic data may provide relevant insight into the

13  email account owner's state of mind as it relates to the offense under investigation.  For example,

14  information in the email account may indicate the owner's motive and intent to commit a crime (e.g.,

15  communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an

16  effort to conceal them from law enforcement).

17  **IV.    INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

18  42.    I anticipate executing this warrant under the Electronic Communications Privacy Act, in

19  particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require

20  Google to disclose to the government copies of the records and other information (including the content

21  of communications and stored data) particularly described in Section I of Attachment B.  Upon receipt

22  of the information described in Section I of Attachment B, government-authorized persons will review

23  that information to locate the items described in Section II of Attachment B.

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

# V.    CONCLUSION

43.    Based on the foregoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on Google LLC who will then compile the requested records at a time convenient to it, reasonable cause to exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Laura E. Giouzelis
Special Agent
Federal Bureau of Investigations

Subscribed and sworn to before me on:

4/25/2019

The Honorable Kendall J. Newman
UNITED STATES MAGISTRATE JUDGE

Carolyn K. Delaney
U.S. Magistrate Judge

Approved as to form by SAUSA ROBERT J. ARTUZ

## **ATTACHMENT A**

### **Property to Be Searched**

  This warrant applies to information associated with the following email addresses: still2theleft@gmail.com, ognunes100@gmail.com, and jwrentals415@gmail.com, which are stored at premises controlled by Google LLC, a company that accepts legal process via the Google Law Enforcement Request System accessible at the website: lers.google.com.

## ATTACHMENT B

### Particular Things to be Seized

## I.     Information to be disclosed by Google LLC (the "Provider")

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) most recently renewed on April 10, 2019 and stored by Google reference number 2048185, the Provider is required to disclose the following information to the government, in unencrypted form whenever available, for each account or identifier listed in Attachment A for the period June 1, 2018 to the present:

a.     The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.     All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, the date on which the account was created, the length of service, the IP address used to register the account, account status, services utilized, alternative email addresses provided during registration, and means and source of payment (including any credit or bank account number);

c.     Account change history, to include prior recovery email addresses and phone numbers;

d.     Complete activity log for the account, to include session date, time, and IP address, user agent string, and name of product/service used;

e. Cookie analysis results that identify other Google accounts accessed from the same computer or computers used to access the target accounts;

f. All Google My Activity data related to the location, internet browsing history, bookmarked websites, and internet search history of the account's user;

g. All files stored in the account's Google Drive;

h. All images and videos stored in the account's Google Photos;

i. All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

j. All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken; and

k. Location History – All location data whether derived from Global Positioning System (GPS) data, cell site/cell tower triangulation/trilateration, and precision measurement information such as timing advance or per call measurement data, and Wi-Fi location. Such data shall include the Coordinates and the dates and times of all recordings from June 1, 2018 to February 2, 2019.

The Provider is hereby ordered to disclose the above information to the government within **14 days** of service of this warrant.

**II.    Information to be seized by the government**

All information described above in Section I that constitutes evidence, fruits, instrumentalities of violations of 18 USC §§ 1344 [bank fraud], 1028A [aggravated identity theft], or 1956 [money laundering], and involving Jonathon Ward (aka Johnathon Ward) or Monica Nunes and since June 1, 2018, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a)    Evidence of the use of an identity not associated with the e-mail address being utilized in furtherance of the scheme;

(b)     The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s);

(c)     Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to email account owner;

(d)     Evidence indicating the subscriber's state of mind as it relates to the crime under investigation, including evidence the e-mail user knew that the property of a financial transaction represented the proceeds of some form of unlawful activities and/or attempts to conduct such a financial transaction;

(e)     Records or communications from any financial institution regarding accounts, credit cards, debit cards, merchant accounts, online money transfer services, banks or any financial institution associated with the fraud scheme;

(f)     Communications between members of the scheme in furtherance of or discussing the scheme including but not limited members associated with the scheme and fruits of the scheme;

(g)     Any communication with payment processors including but not limited to Worldpay/Vantiv;

(h)     Any communication about merchant numbers including but not limited to sharing merchant numbers and their use in this fraud scheme;

(i)     Any identifying information of merchant processors or merchants including phone numbers, Uniform Resource Locator (URL) associated with the merchant or merchant processor;

(j)     Any evidence of the purchase of acquisition of point of sale terminals and/or their used including but not limited to invoice, payment receipt, and photographs of the point of sale terminal;

(k)     Any communication pertaining to the movement and/or destination of funds obtained through fraud;

(l)     Cookie analysis results that identify other Google accounts accessed from the same computer or computers used to access the target accounts;

(m)     Evidence that may identify any coconspirators or aiders and abettors, including records that help reveal their whereabouts; and

(n)     any and all information which may evidence the location of Ward, Nunes, or other co-schemers at a given place and time.

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

### for the

### Eastern District of California

| | |
|---|---|
| In the Matter of the Search of<br><br>INFORMATION ASSOCIATED WITH<br>still2theleft@gmail.com, ognunes100@gmail.com, and<br>jwrentals415@gmail.com THAT IS STORED AT<br>PREMISES CONTROLLED BY Google LLC | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No.<br>  **2: 1 9 - SW - 3 5 3**    **CKD** |

## SEARCH AND SEIZURE WARRANT

To:       Any authorized law enforcement officer

        An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of ____California____
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

        I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

        **YOU ARE COMMANDED** to execute this warrant on or before ___5/9/2019___ *(not to exceed 14 days)*
        ☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

        Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

        The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: any authorized U.S. Magistrate Judge in the Eastern District of California.

        ☐  Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
        ☐  for ____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   _4/25/2019  1:37pm_           _Carolyn K Delaney_
                                                                              *Judge's signature*

City and state:        Sacramento, California                  Kendall J. Newman, U.S. Magistrate Judge
                                                                              Carolyn K. Delaney           *Printed name and title*
                                                                              U.S. Magistrate Judge

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____          _____
           Signature of Judge                                                          Date

## **ATTACHMENT A**

### **Property to Be Searched**

This warrant applies to information associated with the following email addresses: still2theleft@gmail.com, ognunes100@gmail.com, and jwrentals415@gmail.com, which are stored at premises controlled by Google LLC, a company that accepts legal process via the Google Law Enforcement Request System accessible at the website: lers.google.com.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by** Google LLC **(the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) most recently renewed on April 10, 2019 and stored by Google reference number 2048185, the Provider is required to disclose the following information to the government, in unencrypted form whenever available, for each account or identifier listed in Attachment A for the period June 1, 2018 to the present:

a.      The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, the date on which the account was created, the length of service, the IP address used to register the account, account status, services utilized, alternative email addresses provided during registration, and means and source of payment (including any credit or bank account number);

c.      Account change history, to include prior recovery email addresses and phone numbers;

d.      Complete activity log for the account, to include session date, time, and IP address, user agent string, and name of product/service used;

e.    Cookie analysis results that identify other Google accounts accessed from the same computer or computers used to access the target accounts;

f.    All Google My Activity data related to the location, internet browsing history, bookmarked websites, and internet search history of the account's user;

g.    All files stored in the account's Google Drive;

h.    All images and videos stored in the account's Google Photos;

i.    All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

j.    All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken; and

k.    Location History – All location data whether derived from Global Positioning System (GPS) data, cell site/cell tower triangulation/trilateration, and precision measurement information such as timing advance or per call measurement data, and Wi-Fi location.  Such data shall include the Coordinates and the dates and times of all recordings from June 1, 2018 to February 2, 2019.

The Provider is hereby ordered to disclose the above information to the government within **14 days** of service of this warrant.

**II.    Information to be seized by the government**

All information described above in Section I that constitutes evidence, fruits, instrumentalities of violations of 18 USC §§ 1344 [bank fraud], 1028A [aggravated identity theft], or 1956 [money laundering], and involving Jonathon Ward (aka Johnathon Ward) or Monica Nunes and since June 1, 2018, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a)    Evidence of the use of an identity not associated with the e-mail address being utilized in furtherance of the scheme;

(b)    The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s);

(c)    Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to email account owner;

(d)    Evidence indicating the subscriber's state of mind as it relates to the crime under investigation, including evidence the e-mail user knew that the property of a financial transaction represented the proceeds of some form of unlawful activities and/or attempts to conduct such a financial transaction;

(e)    Records or communications from any financial institution regarding accounts, credit cards, debit cards, merchant accounts, online money transfer services, banks or any financial institution associated with the fraud scheme;

(f)    Communications between members of the scheme in furtherance of or discussing the scheme including but not limited members associated with the scheme and fruits of the scheme;

(g)    Any communication with payment processors including but not limited to Worldpay/Vantiv;

(h)    Any communication about merchant numbers including but not limited to sharing merchant numbers and their use in this fraud scheme;

(i)    Any identifying information of merchant processors or merchants including phone numbers, Uniform Resource Locator (URL) associated with the merchant or merchant processor;

(j)    Any evidence of the purchase of acquisition of point of sale terminals and/or their used including but not limited to invoice, payment receipt, and photographs of the point of sale terminal;

(k)     Any communication pertaining to the movement and/or destination of funds obtained through fraud;

(l)     Cookie analysis results that identify other Google accounts accessed from the same computer or computers used to access the target accounts;

(m)    Evidence that may identify any coconspirators or aiders and abettors, including records that help reveal their whereabouts; and

(n)     any and all information which may evidence the location of Ward, Nunes, or other co-schemers at a given place and time.